JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Terrance Ballou ("Ballou") appeals his conviction for possession and trafficking of drugs, each with a major drug offender specification. Finding no merit to the appeal, we affirm.
 {¶ 2} The following evidence was presented at Ballou's bench trial in June 2003. Cleveland police obtained information from a confidential reliable informant ("CRI") that drug sales were being made by Ballou. Detectives John Dlugolinski and Todd Clark testified that on December 4, 2002, the CRI made an initial controlled purchase of crack cocaine with police buy money.[1]
 {¶ 3} The Cleveland police arranged for the CRI to make another larger purchase of crack cocaine. On December 6, 2002, the CRI contacted Ballou to purchase 4.5 ounces of crack cocaine. Ballou made arrangements for the CRI to pick him up in front of Joe D's Lounge. The CRI also provided police with an address on East 113th Street, the home of Eddie Wilson ("Wilson") and the place where the informant believed that the drugs were held. As a result, Cleveland police set up surveillance in that area as well.
 {¶ 4} Prior to the arranged pickup, the CRI's vehicle was searched for any contraband or drugs, and the CRI was equipped with a wire so police could monitor the transaction through a listening device. The CRI was also given $3,700 in buy money for the purchase of crack cocaine. A signal was also established to notify the surveillance officers that the CRI saw the drugs.
 {¶ 5} The CRI picked up Ballou at Joe D's Lounge as arranged. Det. Dlugolinski testified that, through the listening device, he heard Ballou tell the CRI that "they had to go to his boy's house" to pick up the drugs. The CRI and Ballou then traveled to Wilson's home.
 {¶ 6} Det. Clark testified that Ballou exited the CRI's vehicle and approached Wilson on the street. He observed Ballou and Wilson briefly enter Wilson's home and then Ballou exited the home and returned to the car, where he asked the CRI for the money. The CRI, however, did not give Ballou the money, and Ballou then went back into Wilson's house. Wilson and Ballou exited the house and entered the CRI's vehicle, Ballou in the front passenger seat and Wilson in the back seat.
 {¶ 7} Det. Clark and Det. Dlugolinski testified that after verification that the CRI had seen the drugs, the police approached the vehicle. Det. Robert Albertini and his partner observed three individuals in the car — the driver, the front seat passenger, and the back seat passenger. The detectives told them to put up their hands. Ballou put up only his left hand When Ballou finally put up his right hand, Det. Albertini saw a large bag of what appeared to be crack cocaine on the center console of the front seat.
 {¶ 8} On cross-examination, Det. Albertini admitted that he did not see Ballou reach across with his right hand to the console area. He also testified that the only individuals near the drugs on the console were the CRI and Ballou, and that Wilson was not within arm's reach of the drugs. The detective further observed a large amount of U.S. currency on the front passenger floorboard where Ballou was sitting. Det. Albertini acknowledged that at the time he approached the car, no one had possession of the drugs located in the console area or the money found on the floorboard of the vehicle.
 {¶ 9} Det. Clark testified the $3,700 of buy money was recovered from the floor of the front seat passenger area. He also testified that $20 of buy money from the first buy between the CRI and Ballou was found on Ballou's person.
 {¶ 10} Scott Miller of the police forensic lab testified that the substance found in the console area of the vehicle tested positive for crack cocaine, weighing 112.42 grams.
 {¶ 11} The trial court found Ballou guilty of possession of drugs, with a major drug offender specification, drug trafficking with a major drug offender specification, and possession of criminal tools. The trial court sentenced him to a total of ten years in prison. Ballou appeals, raising one assignment of error.
 Manifest Weight of the Evidence {¶ 12} In his sole assignment of error, Ballou contends that the trial court's verdict finding him guilty of drug possession and drug trafficking are against the manifest weight of the evidence. Specifically, he claims that the evidence failed to prove that he knowingly possessed the 112-gram bag of crack cocaine found on the console and that, without the informant's testimony regarding Ballou's participation, there was not enough evidence to convict him. We disagree.
 {¶ 13} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidenceand all reasonable inferences, considers the credibility ofwitnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction." Id. at 387.
 {¶ 14} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169. Additionally, circumstantial evidence and direct evidence inherently possess the same probative value and, therefore, should be subjected to the same standard. State v. Jenks (1991), 61 Ohio St.3d 259,273.
 {¶ 15} Upon review of the evidence presented at the trial, this court cannot find that the trial court lost its way when it found Ballou guilty of possession and trafficking of drugs.
 {¶ 16} R.C. 2925.01 defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. State v.Haynes (1971), 25 Ohio St.2d 264, 267 N.E.2d 787; State v.Hankerson (1982), 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus.
 {¶ 17} Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession.State v. Wolery (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351. Constructive possession will be established where the accused was able to exercise dominion and control over the contraband Id.
 {¶ 18} In the instant case, we conclude that the State demonstrated that Ballou had constructive possession of the crack cocaine. At the time of the arrest, the detectives observed Ballou sitting in the front passenger seat of the vehicle, while Wilson was seated in the back. A large bag of crack cocaine was located on the center console of the front seat. Det. Albertini testified that the only individuals near the drugs were the CRI and Ballou. Wilson was not within arm's reach of the drugs.
 {¶ 19} R.C. 2925.03 provides that "no person shall knowingly sell or offer to sell a controlled substance."
 {¶ 20} In the instant case, we conclude that the evidence demonstrated that Ballou was trafficking crack cocaine. Both Det. Dlugolinski and Det. Clark testified that the CRI made an initial purchase of crack cocaine from Ballou on December 4, and that the CRI again contacted him to purchase 4.5 ounces of crack cocaine on December 6. Both detectives testified that the CRI picked up Ballou at Joe D's Lounge and subsequently traveled to Wilson's house.
 {¶ 21} Furthermore, Det. Albertini testified that he observed a substantial amount of U.S. currency on the floorboard of the vehicle. Det. Clark corroborated this observation, testifying that the $3,700 of buy money was recovered from the front passenger floor where Ballou was sitting.
 {¶ 22} Accordingly, after reviewing the record, weighing the evidence, and considering the credibility of the witnesses, we cannot say that trial court lost its way. We find substantial, competent, credible evidence to support the trial court's verdict.
 {¶ 23} The sole assignment of error is overruled.
 {¶ 24} The judgment is affirmed.
Judgment affirmed.
Corrigan, A.J., and Karpinski, J., concur.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Det. Dlugolinski testified that "buy money" is currency, which is previously recorded before any drug buys are made.