[Cite as *State v. Hepler*, 2016-Ohio-2662.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                          Court of Appeals No. WD-15-012

　　　　Appellee                                    Trial Court No. 14-TRC-05527

v.

Hunter Hepler                                         **DECISION AND JUDGMENT**

　　　　Appellant                                   Decided:　April 22, 2016

* * * * *

Matthew L. Reger, Bowling Green Prosecutor, for appellee.

Scott T. Coon, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Appellant, Hunter A. Hepler, appeals a Bowling Green Municipal Court decision denying his motion to suppress evidence.  For the reasons set forth below, we reverse and remand the matter to the trial court.

{¶ 2} At 4:20 a.m. on August 10, 2014, Wood County Sheriff Deputy Jody Swoap was dispatched to a single vehicle accident in rural Wood County, Ohio. Upon arrival, Deputy Swoap observed Hepler standing next to his damaged vehicle. His head was bleeding. When questioned by the deputy, Hepler admitted he had been drinking. Despite indications that Hepler did not want medical attention, Deputy Swoap allowed paramedics to treat Hepler in the back of their unit. Shortly thereafter, Hepler was transported by EMS to St. Luke's Hospital in Lucas County, Ohio. No field sobriety tests were conducted.

{¶ 3} When his investigation at the scene was complete, Deputy Swoap returned to his office and contacted St. Luke's Hospital. At 6:01 a.m., Deputy Swoap sent the hospital a fax that included a form on Wood County Sheriff's Office letterhead entitled "STATEMENT REQUESTING THE RELEASE OF RECORDS." The form identified Hepler by date of birth and social security number and contained the deputy's name, title, employing agency, and telephone number. The form further stated:

> I hereby state that an official criminal investigation has begun regarding * * * [Hepler] and that I believe that one or more tests has been administered to him by this health care provider to determine the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in his blood, breath, or urine at a time relevant to the criminal offense in question. Therefore, I hereby request that, pursuant to Division (B)(2) of Section 2317.02 of the Revised Code, this health care provider supply me

2.

with copies of any records the provider possesses that pertain to any test or the results of any test administered to the person specified above to determine the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in his blood, breath, or urine at any time relevant to the criminal offense in question.[1]

**{¶ 4}** Two days later, the hospital faxed a copy of a "Lab Order Detail" report to Deputy Swoap.  The report identified Hepler as an emergency room patient and Dr. Nadia F. Ashraf-Mogal as his attending physician.  The report contained two boxes.  The first box contains the results of a urine test numbered X33886 with a collection date of "08/10/2014."  No collection time was specified for the urine test.   The first box reports "Negative" for  "Drugs of Abuse" including amphetamine/methamphetamine, barbiturates, benzodiazepines, cocaine metabolite, opiates, phencyclidine, methadone. The first box reports "POSITIVE:  Confirmation available upon request" for cannabinoids.  The urine test was ordered by Dr. Mahammed A. Ashraf.  The bottom of the first box contains the notation "[u]rine drug screening performed for medical purposes only."

**{¶ 5}** The second box contains the results of a blood test numbered X33511 with a collection date of "08/10/2014" and a collection time of "0625."  The second box reports

---

[1] We note that the form utilized by the Wood County Sheriff's Office does not contain a date/time of the event which triggered the "official criminal investigation."  Rather, it vaguely states law enforcement is seeking results pertaining to "any time relevant to the criminal offense in question."

3.

0.16 g/dL for Ethanol (hereinafter the "blood-alcohol test"). The test was ordered by Dr. Mahammed A. Ashraf. Unlike the first box, the second box contains no notation regarding the purpose of the blood-alcohol test.

{¶ 6} On August 25, 2014, Deputy Swoap issued a citation charging Hepler with one count of failure to control in violation of R.C. 3511.202, one count of operating a motor vehicle with a prohibited alcohol content in violation of R.C. 4511.19(A)(1)(a), one count of operating a motor vehicle with a prohibited alcohol content in violation of R.C. 4511.19(A)(1)(b), possession of marijuana in violation of R.C. 2925.11, and possession of paraphernalia in violation of R.C. 2925.14.

{¶ 7} On August 27, 2014, Hepler filed a demand for discovery and preservation of evidence. On October 10, 2014, Hepler filed a motion to suppress the results of "any blood testing performed by St. Luke's Hospital." He alleged that the blood sample was "not taken from him within the three hour period mandated by Ohio Revised Code 4511.19(D)(1)(b)." Hepler further alleged that the blood sample had been destroyed by the hospital, in violation of his right to due process.

{¶ 8} On November 14, 2014, Hepler filed a supplement to his motion to suppress alleging that a warrantless search and seizure of his medical records, without exigent circumstances, violated the United States and Ohio Constitutions. In support, Hepler cited *State v. Clark*, 23 N.E.3d 218, 2014-Ohio-4873 (3d Dist.) and *State v. Little*, 23 N.E.3d 237, 2014-Ohio-4871 (3d Dist.).

4.

**{¶ 9}** A hearing on Hepler's motion to suppress was held December 4, 2014.  The issues in dispute were defined by the court as:

    1.  Time of operation of defendant's vehicle.

    2.  Are the blood test results of the defendant admissible in evidence where the deputy sheriff requested and obtained the result from St. Luke's Hospital pursuant to a request under R.C. 2317.02(B)(2) but without the benefit of a search warrant.

    3.  Are the blood test results admissible in evidence where both the defendant and the state requested that the hospital preserve all evidence in the matter, but the defendant's blood sample was discarded by St. Luke's anyway.

After hearing evidence on Hepler's motion to suppress, the trial court issued a decision denying the same.  The trial court indicated that it was persuaded by the authority cited by appellant and held that "in the absence of exigent circumstances, the state must still obtain a search warrant to obtain private medical records of a suspect."  The trial court nonetheless denied Hepler's motion to suppress finding the good faith exception to the exclusionary rule applied because Deputy "Swoap acted in accord with R.C. 2317.02 as he had been trained and pursuant to [Wood County Sheriff Office] practice.  He complied with the statute to obtain evidence in this matter."

**{¶ 10}** On February 9, 2015, Hepler withdrew his plea of not guilty and entered a plea of "no contest" to operation of a vehicle while under the influence of alcohol in

5.

violation of R.C. 4511.19(a)(1)(a), a first degree misdemeanor. In exchange, the state dismissed the remaining charges. Hepler was found guilty and sentenced. Execution of the sentence has been stayed pending this appeal.

{¶ 11} Hepler asserts the following assignments of error for our review:

I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE IN THE FORM OF MEDICAL RECORDS OBTAINED BY THE WOOD COUNTY SHERIFF'S DEPARTMENT WITHOUT THE CONSENT OF THE APPELLANT AND WITHOUT A SEARCH WARRANT.

II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO EXCLUDE THE USE AS EVIDENCE THE RESULTS OF THE TESTING OF BLOOD TAKEN FROM THE APPELLANT WHEN THE SAMPLE TAKEN FROM THE APPELLANT WAS NOT PRESERVED AND THE APPELLANT HAD DEMANDED THAT IT BE PRESERVED.

{¶ 12} Preliminarily, we note that when ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995). A reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, citing *State v. Fanning*, 1 Ohio

6.

St.3d 19, 437 N.E.2d 583 (1982). "The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case." (Citations omitted.) *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 16.

{¶ 13} In his first argument under his first assignment of error, Hepler urges us to uphold the trial court's decision that law enforcement must obtain a search warrant before requesting a suspect's medical records. Hepler argues that patients have a reasonable expectation of privacy in medical records and when under investigation for a crime, "should not be placed in the position where they must decide whether to receive appropriate medical care, which would require diagnostic testing, or refuse medical care due to a fear that the government will obtain the results of the diagnostic testing."

{¶ 14} In response, the state concedes that it is "asking this court to allow access to medical records without a search warrant," but justifies its position because the access it is requesting is limited to "a chemical test showing a level of alcohol or drugs – in a specific situation – during a criminal investigation." The state then asks the court to "look at the practical implications" of the trial court's decision to follow Third District precedent. The state asserts:

> Obtaining a search warrant can sometimes be more difficult than simply
> filling out an affidavit and presenting it to a judge. Crossing jurisdictional
> lines can create havoc for an officer. In this case the accident which led to
> the OVI investigation took place in Wood County but the hospital is in

7.

Lucas County. Obtaining a search warrant is that much more difficult for a Wood County Sheriff to find a judge in Lucas County. It would be even more difficult for an officer in Williams, Henry, Defiance or any of the other rural counties within this district. Although difficulty in getting a search warrant is not of great concern when constitutional rights are at stake, such hurdles are unnecessary and do not serve the public good when a search warrant should not be required.

{¶ 15} "The Fourth Amendment protects the individual's actual and justifiable expectation of privacy from the ear and eye of the government." *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, ¶ 13. "If the state wishes to intrude on the individual's right to be secure in his person, house, paper, and effects by searching or seizing him or his things, the state must first secure a warrant." *Id.* at ¶ 14. Searches conducted without a warrant are per se unreasonable, subject to specifically established exceptions. *State v. Smith*, 56 Ohio St.2d 405, 407, 384 N.E.2d 280 (1978). Absent an exception, courts are required to exclude all evidence seized in violation of the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶ 16} It has long been held that with some well-recognized exceptions, search warrants are required "where intrusions into the human body" are concerned. *Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In *Missouri v. McNeely*, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), the United States Supreme Court reiterated this finding when it determined that an "invasion of bodily integrity" such as a

8.

compelled physical intrusion beneath an individual's skin to obtain a sample of blood for use in a criminal investigation implicates an individual's "most personal and deep-rooted expectations of privacy." *Id.* at 1558, citing *Winston v. Lee*, 470 U.S. 753, 760, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985).

{¶ 17} The state asserts that the warrant requirement is not implicated here because law enforcement was not seeking physical intrusion beneath Hepler's skin. Rather, it merely sought results of a blood-alcohol test that had been performed for "medical purposes" pursuant to R.C. 2317.02(B)(2).

{¶ 18} R.C. 2317.02(B)(2)(a) states, in relevant part, as follows:

> If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol * * * in the person's whole blood, blood serum or plasma, breath, or urine at any time relevant to the criminal offense in question, and that conforms to section 2317.022 of the Revised Code, the provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses.

9.

**{¶ 19}** In turn, R.C. 2317.022 entitled "Written requests from law enforcement officers to obtain test results of alcohol, drug, controlled substances, or metabolites of controlled substances from health care providers" provides, in relevant part, as follows:

> If an official criminal investigation has begun regarding a person or if a criminal action or proceeding is commenced against a person, any law enforcement officer who wishes to obtain from any health care provider a copy of any records[2] the provider possesses that pertain to any test or the result of any test administered to the person to determine the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, breath, or urine at any time relevant to the criminal offense in question shall submit to the health care facility a written statement in the following form:

R.C. 2317.022 sets forth the language law enforcement must utilize when issuing a request for records. Notably, the language utilized by the Wood County Sheriff's Office in its "STATEMENT REQUESTING THE RELEASE OF RECORDS" is consistent with the language set forth in R.C. 2317.022.

**{¶ 20}** As stated above, when reviewing a trial court's decision on a motion to suppress, an appellate court defers to the trial court's factual findings if some competent,

---

[2] "Medical record" is defined as "data in any form that pertains to a patient's medical history, diagnosis, prognosis, or medical condition and that is generated and maintained by a health care provider in the process of the patient's health care treatment." R.C. 3701.74(A)(8).

10.

credible evidence supports them. Here, the implicit, yet critical finding upon which the trial court based its decision is that the blood-alcohol test was performed for medical purposes. However, there is no evidence in the record to support such a finding. In fact, the evidence suggests that the blood-alcohol test was done in response to law enforcement's R.C. 2317.022 request sans warrant or a recognized exception to the warrant requirement.

{¶ 21} Neither the trial court nor the parties take note of the timing of Deputy Swoap's R.C. 2317.022 request, a critical fact given the potential for abuse and misuse of the authority purportedly granted therein. In its brief, the state asserts that the blood-alcohol test was performed for medical purposes. The evidence presented is obviously contrary to the state's assertion. On its face, the report does not indicate why the blood-alcohol test was performed.

{¶ 22} It is undisputed that Deputy Swoap faxed the R.C. 2317.022 request to the hospital at 6:01 a.m. on August 10, 2014. A specimen for the blood-alcohol test was collected 24 minutes *after* the request was made.

{¶ 23} While the toxicology report specifically indicates that the "urine drug screening" was "performed for medical purposes only," there is no indication on the report that the blood-alcohol test was done for medical purposes.

{¶ 24} Finally, when Deputy Swoap was questioned as to why he did not obtain a search warrant in this matter, the deputy indicated that he had previously used the R.C.

11.

2317.022 form to "get the blood draw." The following is an excerpt of Deputy Swoap's testimony describing the steps he took after leaving the scene of the accident:

Q. So what did you do then?

A. Went back to the office and I called St. Luke's Hospital, requested – to see who I could send the paperwork to hold the blood results.

Q. And did you do that?

A. I did. I sent a request for medical release by Fax.

* * *

Q. And what was your understanding what you would do in filling out this form?

A. I would fill it out, I would Fax it to the hospital, and they would release the toxicology results.

* * *

Q. Now, you filled out that form, let me ask you this. Why didn't you choose to get a search warrant to ask for a blood draw?

A. My understanding that the form has sufficed to get the blood draw before, I didn't – Lucas County is not in my jurisdiction. I am not going to attempt to track down a Judge for a search warrant in Lucas County. And this has worked in the past so I went with standard practice.

{¶ 25} In no circumstance is an R.C. 2317.022 request a substitute for a warrant for a blood draw for a blood-alcohol test nor is it a recognized exception to the warrant

12.

requirement. Here, the trial court put the cart before the horse when it examined Hepler's expectation of privacy in medical records without first finding that the blood-alcohol test was, in fact, performed for medical purposes. Because the evidence does not support this necessary underlying factual finding, we must conclude that the court erred in denying Hepler's motion to suppress. Hepler's first argument under his first assignment of error is well-taken. Our resolution of this issue renders moot Hepler's remaining argument in his first assignment of error—that the good faith exception to the warrant requirement is not applicable here—and we need not address it.

{¶ 26} In light of our decision regarding Hepler's first assignment of error, we need not address Hepler's second assignment of error.

{¶ 27} We reverse the December 18, 2014 judgment of the Bowling Green Municipal Court denying Hepler's motion to suppress, as well as the February 9, 2015 judgment of conviction and sentence. We remand this matter to the trial court for proceedings consistent with this decision. The state is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments reversed.

13.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                                                     JUDGE

Thomas J. Osowik, J.

                                               _____

James D. Jensen, P.J.                                          JUDGE
CONCUR.

                                             _____
                                                                     JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.