DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Demarko J. Ray, appeals from his conviction in the Wadsworth Municipal Court for possession of a controlled substance in violation of City Ordinance 513.03(A). We affirm.
 I. {¶ 2} At approximately 10:15 p.m. on September 13, 2002, Wadsworth Police Sergeant David Dorland, along with several other officers, responded to a dispatch broadcast of a reported fight and a blue car at the scene. Although the officers found the scene empty, Sgt. Dorland continued to patrol the area. A few minutes later, about one-third of a mile away, Sgt. Dorland observed a blue car turn onto the street and then into a Sunoco station lot where it stopped by the building.
 {¶ 3} As logged at 10:28 p.m., Sgt. Dorland pulled his police cruiser into the Sunoco lot and parked approximately 10-15 feet behind the blue car, in a position that would have left unimpeded access for the car to drive away. Sgt. Dorland did not activate his flashing lights and did not treat this as a traffic stop. Rather, as the driver, Demarko Ray, exited the blue car, Sgt. Dorland exited his cruiser and briefly questioned Mr. Ray about the alleged fight and his whereabouts. Mr. Ray denied any knowledge of the fight and proceeded into the Sunoco store to purchase a beverage. Sgt. Dorland walked around to the passenger side of the car and spoke through the open widow to the passenger, Michael Brabson ("Brabson"), who remained seated in the car. While Mr. Ray was still inside the store and Sgt. Dorland was attempting to verify Brabson's information, two other Wadsworth Police cruisers arrived, both of which had originally responded to the alleged fight a few minutes earlier just a few blocks down the street.
 {¶ 4} As logged at 10:30 p.m., two minutes after Sgt. Dorland, Officer Phillip Canfora's canine unit arrived and confirmed that the activity was still in progress so that a canine sniff would not delay the process. Within two minutes of arriving, Officer Canfora began a canine sniff of the vehicle, as is his routine response to any call. As logged at 10:31 p.m., Officers Kaiser and Fetter arrived, and Officer Kaiser relayed to Sgt. Dorland that Brabson was a suspect in an unrelated vandalism. Meanwhile, Sgt. Dorland had discovered that Brabson's name did not match the social security number he had given. Sgt. Dorland obtained further information from Brabson and continued the check on his in-cruiser computer. Within five minutes of beginning the sniff, the dog alerted to the passenger side of the car. During this time, Mr. Ray returned from inside the Sunoco.
 {¶ 5} Sgt. Dorland finished verifying Brabson's information, but due to the dog alerting, Brabson was asked to exit the car and the dog inserted. The dog alerted on the center consol. The officers searched the consol and, beneath certain papers and effects, discovered a baggie of marijuana which the officers then seized. Upon questioning, both Mr. Ray and Brabson denied ownership or any knowledge of the marijuana. Mr. Ray did confirm for Sgt. Dorland that although the car was owned by his girlfriend's mother, he had been in possession of the car for over a week and in exclusive possession of the car that entire day. Both Mr. Ray and Brabson were released pending a decision by the prosecutor, and Sgt. Dorland cleared the scene at 10:52 p.m. As logged, the entire encounter lasted 24 minutes.
 {¶ 6} On November 15, 2002, the City of Wadsworth filed a complaint and issued a warrant for the arrest of Mr. Ray, charging him with possession of a controlled substance in violation of Wadsworth Codified Ordinance 513.03(A), a first degree misdemeanor. Mr. Ray pled not guilty and filed a motion to suppress the evidence against him, the marijuana seized from the car.
 {¶ 7} On January 10, 2003, the Wadsworth Municipal Court conducted a hearing on the motion to suppress and denied the motion, thereby admitting the evidence. Mr. Ray waived his right to a jury and proceeded to a bench trial on March 17, 2003. The trial judge found Mr. Ray guilty of the charge and sentenced him accordingly.
 {¶ 8} Mr. Ray timely appealed, asserting two assignments of error.
 II. A. First Assignment of Error
"As a matter of law, the trial court's decision to denying [sic] appellant's motion to suppress was in error."
 {¶ 9} In his first assignment of error, Mr. Ray asserts that the trial court erred by admitting the seized marijuana, in that the search of the car violated his Fourth Amendment rights because it was an investigatory stop extended beyond the time necessary to effectuate the purpose of the stop and concluded with a dog sniff that was an unjustified search or an unlawful inquiry. We disagree.
 {¶ 10} A motion to suppress evidence under the Fourth Amendment involves mixed questions of law and fact. Ornelas v. United States
(1996), 517 U.S. 690, 696-97, 134 L.Ed.2d 911; State v. Booth,151 Ohio App.3d 635, 2003-Ohio-829, at ¶ 12. Therefore, this Court grants deference to the trial court's findings of fact, but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. Id. As Mr. Ray chose a bench trial, the trial court judge served as the finder of fact during both the suppression hearing and the trial.
 {¶ 11} In this appeal, Mr. Ray first contends that the Wadsworth Police engaged in an investigatory stop because he felt detained and should have been told that he was free to leave. However, it is well settled that police officers may engage citizens in conversation, without such questioning necessarily becoming a detention. Florida v. Royer
(1983), 460 U.S. 491, 497, 75 L.Ed.2d 229 (stating that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions"). Accord State v.Lawson, 9th Dist. No. 21227, 2003-Ohio-1299, at ¶ 12. Furthermore, the officers need not expressly inform the citizen of the right to decline cooperation, or that they are free to leave. United States v. Mendenhall
(1980), 446 U.S. 544, 555, 64 L.Ed.2d 497; Ohio v. Robinette (1996),519 U.S. 33, 39-40, 136 L.Ed.2d 347. Accord State v. Iacona (March 15, 2000), 9th Dist No. 2891-M; Lawson at ¶ 12. Therefore, the encounter was not a traffic stop and was valid at its inception.
 {¶ 12} Mr. Ray next contends that Sgt. Dorland questioned the passenger, Brabson, and checked his information merely as a pretext to prolong the detention until the canine unit could arrive, and thereby initiate an unjustified search for illegal drugs. For this proposition, Mr. Ray relies on State v. Correa (Dec. 12, 1995), 108 Ohio App.3d 362,368 (finding that the officers unjustifiably prolonged the traffic stop to fish for evidence). In Correa, the court stated:
"What is at issue in this case, however, is whether the scope of the troopers' inquiry exceeded that which was constitutionally permissible once they determined that appellant was not operating a motor vehicle while under the influence of alcohol." Id. at 367.
 {¶ 13} However, the present case does not involve a traffic stop or a prolonged detention. There was no traffic stop at all, but rather a casual questioning of Mr. Ray, the driver of the suspect car, as he entered the Sunoco. Thereafter, Sgt. Dorland questioned the car's passenger, Brabson, while Mr. Ray was inside the Sunoco store purchasing a beverage. The canine unit arrived at the scene approximately two minutes after Sgt. Dorland, and the sniff was apparently completed by the time Mr. Ray emerged from the store and before Brabson's information had been verified. Other than Mr. Ray's conduct of walking away from Sgt. Dorland and into the store, there was no evidence that Mr. Ray ever decided or attempted to leave, nor is there any evidence that he was detained. As distinguished from Correa, this encounter did not involve a prolonged traffic stop or an inquiry beyond the point at which the initial suspicion of Brabson had been resolved. See State v. Guckert, 4th Dist. No. 99CA49, 2000-Ohio-1958; State v. Bolding (May 28, 1999), 6th Dist. No. E-97-115 ("This case does not involve the manipulative practices we criticized in State v. Correa. . . ."). Therefore, this encounter was not unduly prolonged beyond the reasonable time necessary to effectuate the purpose of the inquiry into the suspects' knowledge and Brabson's identity.
 {¶ 14} Finally, Mr. Ray contends that the canine sniff of the car was an unjustified search or an unlawful inquiry, because it was completely unrelated to the initial purpose of the questioning, which regarded the reported fight. However, it is well settled that a canine sniff is not a search within the Fourth Amendment so long as the sniff occurs in a place where the officers have a right to be. United States v. Place (1983),462 U.S. 696, 707, 77 L.Ed.2d 110; State v. Laird (Jan. 30, 2002), 9th Dist. No. 3213-M, 2002-Ohio-311. In a case arising out of the Northern District of Ohio, the United States Court of Appeals for the Sixth Circuit articulated the similarity between a dog sniff and the plain view doctrine:
"Just as the sniffing of contraband by trained canines does not constitute an unlawful search, neither does the viewing by humans of contraband in plain sight amount to an unlawful search. As long as the observing person or the sniffing canine are legally present at their vantage when their respective senses are aroused by obviously incriminating evidence, a search within the meaning of the Fourth Amendment has not occurred." United States v. Reed (C.A. 6, 1998),141 F.3d 644, 649.
 {¶ 15} In the present case, the canine sniff was conducted concurrently with Sgt. Dorland's legitimate questioning regarding the reported fight and check of Brabson's identity. Just as if Sgt. Dorland had observed contraband in plain sight, the canine sniff detected contraband without undue intrusion on Mr. Ray's or Brabson's privacy and did not violate the Fourth Amendment. Therefore, we find no unjustified or unlawful inquiry in conducting the canine sniff.
 {¶ 16} We find Mr. Ray's encounter with the police was not an investigatory stop, the police took no action to detain Mr. Ray or prolong the encounter, and this canine sniff was not a search under the Fourth Amendment. Therefore, the trial court did not err in denying Mr. Ray's motion to suppress. Mr. Ray's first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court's decision convicting appellant of drug possession was against the manifest weight of the evidence and was based upon evidence insufficient withstand [sic] appellant's motion for acquittal pursuant to Ohio criminal rule 29."
 {¶ 17} In his second assignment of error, Mr. Ray avers that the trial court erred in denying his Crim.R. 29 motion for acquittal, and that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 18} As a preliminary matter, the Court observes that sufficiency of the evidence and weight of the evidence are legally distinct issues.State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe
(1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins,78 Ohio St.3d at 386.
 {¶ 19} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 20} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 21} In this second assignment of error, Mr. Ray contends that the prosecution's evidence did not establish that he had possession of the marijuana, either actual or constructive, but rather offered merely "speculation" and not proof of knowledge. Specifically, Mr. Ray argues that because the marijuana was found in the car's center consol, equally accessible to either the driver or the passenger, the prosecution produced no evidence that Mr. Ray had knowledge of its presence or that it was under his dominion or control. On this basis, Mr. Ray argues that the proof was insufficient or against the manifest weight of the evidence.
 {¶ 22} As a preliminary matter, when the disputed issue is the defendant's culpable mental state, such as defendant's knowledge, proof must be derived from circumstantial evidence, as direct evidence will not usually be available. State v. Ray (Dec. 22, 1993), 9th Dist. No. 16050, citing State v. Lott (1990), 51 Ohio St.3d 160, 168. Accordingly, it is well settled that the State may rely on circumstantial evidence to prove an essential element of an offense, as "`[c]ircumstantial evidence and direct evidence inherently possess the same probative value[.]'" Statev. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, quoting State v.Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. "Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt."Jenks, 61 Ohio St.3d at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. Lott, 51 Ohio St.3d at 168. Therefore, the jury may employ a series of facts or circumstances as the basis for its ultimate conclusion. Id.
 {¶ 23} Possession need not be actual, but may be constructive. Statev. Butler (1989), 42 Ohio St.3d 174, 176. Constructive possession occurs when a person knowingly exercises dominion or control over the item, even without physical possession. State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. Although circumstantial evidence is appropriate, it would be insufficient to rely merely on the person's presence in the vicinity of the item. See State v. Haynes (1971), 25 Ohio St.2d 264, paragraph two of syllabus (discussing a dwelling). Rather, further circumstances, such as the ready availability of the item and its close physical proximity to the person, support the conclusion of constructive possession. State v.Riley, 9th Dist. No. 20618, 2001-Ohio-1785. Cars present a particular scenario for constructive possession:
"Moreover, a defendant's `possession of the keys to the automobile is a strong indication of control over the automobile and all things found in or upon the automobile.' Furthermore, when `one is found to be the driver of a car in which drugs are within easy access of the driver, constructive possession will be established.'" State v. Miller (July 27, 1999), 4th Dist. No. 98 CA 2467, quoting State v. Kurtz (Oct. 27, 1998), 10th Dist. No. 98AP-210.
 {¶ 24} Thus, dominion and control over the vehicle can establish dominion and control over the items within the vehicle, including contraband such as drugs or weapons. State v. Paul, 8th Dist. No. 79596, 2002-Ohio-591 ("defendant presented some testimony to show that another person who allegedly owned the [item] had access to the defendant's car, but that testimony is not dispositive"). For drugs, constructive possession may be inferred from their presence in a usable form and in close proximity to the defendant. State v. Thomas, 9th Dist No. 21251, 2003-Ohio-1479, at ¶ 11; State v. Keller (Mar. 8, 2000), 9th Dist. No. 19449.
 {¶ 25} At Mr. Ray's trial, it was undisputed that both Mr. Ray and Brabson had equal access to the car's center consol, and upon discovery of the marijuana, both denied ownership. The police officers testified that they observed nothing to indicate that Brabson was concealing anything in the car. Specifically, the officers testified that Brabson made no furtive movements suggesting guilt or possession of contraband, but rather that he was cooperative and unconcerned throughout. Mr. Ray testified that he was in full possession of the car for the preceding week and exclusive possession that day. Mr. Ray also testified that he stored personal items within the consol, including old bills, insurance cards, playing cards, gum and his cigarettes. The marijuana was discovered beneath these items, not in a position as if it had been furtively dropped into the consol. Based on this evidence, a reasonable finder-of-fact, judge or juror, could have found the marijuana to be within the possession of Mr. Ray, and convict Mr. Ray under the ordinance. There is no basis from the evidence presented to conclude that the finder of fact lost its way or created a manifest miscarriage of justice. See Otten, 33 Ohio App.3d at 340. Therefore, we find that the conviction was not against the manifest weight of the evidence.
 {¶ 26} Having found that Mr. Ray's conviction was not against the manifest weight of the evidence, we also conclude that there was sufficient evidence to support the conviction. See Roberts, supra. Accordingly, Mr. Ray's second assignment of error is overruled.
 III. {¶ 27} Mr. Ray's first and second assignments of error are overruled. The judgment of the Wadsworth Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Baird, P.J., Whitmore, J., concur.