OPINION
{¶ 1} Appellant, Rachad Scott, appeals from the judgment of conviction and sentence imposed by the Franklin County Court of Common Pleas on September 29, 2005 following a bench trial.
 {¶ 2} On February 25, 2005, the Franklin County Grand Jury returned an indictment that charged appellant with two counts of receiving stolen property. Count one charged receiving stolen property, an automobile belonging to Donna Smathers, in violation of R.C. 2913.51 and a felony of the fourth degree. Count two alleged that appellant received, retained or disposed of a stolen license tag belonging to Aaryn Thomas, a felony of the fifth degree. Count two is not at issue in this appeal.
 {¶ 3} While represented by counsel, appellant waived trial by jury and agreed to a trial to the court. After hearing evidence and arguments of counsel, the court found appellant guilty of count one, receiving stolen property, the motor vehicle belonging to Donna Smathers. The court imposed a sentence of one year of community control on condition that appellant serve a term of six months in the county jail. This appeal followed.
 {¶ 4} At trial, Donna Smathers testified that she owned a red 1997 Pontiac Grand Am automobile. The car was stolen during the early morning hours of January 13, 2005. Smathers filed a police report of the theft. On February 18, 2005, police telephoned Smathers and advised they had located her car. Smathers went to the police impounding lot where her car was being held and saw that a window was broken out, a door damaged, the trunk lock was broken, and a newly purchased radio and CD player had been stolen.
 {¶ 5} On the same day that Smathers' stolen Pontiac was recovered, February 18, 2005, Melissa Mitchell contacted Columbus Police Officer Tolber and told him that her brother had taken her car without permission. Mitchell advised where her brother lived and Officer Tolber drove to her brother's apartment at 5607 Trotters Trail to confront him about taking the car. Mitchell's brother and appellant were at the apartment when Officer Tolber arrived.
 {¶ 6} Officer Tolber saw Mitchell's car parked in the parking lot two parking spaces from the apartment door. Officer Tolber went to the apartment and asked where Mitchell's car keys were. Her brother said he could not find the keys.
 {¶ 7} Apparently, Mitchell also arrived at her brother's apartment at the same time and noticed a red car parked next to her car. She brought that vehicle to Officer Tolber's attention. As a result, Officer Tolber returned to the apartment to speak with appellant who was still inside the apartment with Mitchell's brother. Officer Tolber identified appellant in court.
 {¶ 8} While inside the apartment, Officer Tolber asked appellant if he had driven Mitchell's car, "because originally I was told that he did." (Tr. at 17.) No objection was made at trial and no claim of error regarding this statement has been raised on appeal. Appellant denied driving Mitchell's car. Officer Tolber then asked both men if they had keys in their pockets. Both produced keys.[1] Mitchell's brother produced a house key. Appellant produced an automobile key. Although Officer Tolber had mentioned only Mitchell's vehicle, he noticed that the key appellant produced was to a General Motors car.[2] Officer Tolber was aware that Smathers' stolen Pontiac, parked next to Mitchell's car, was made by General Motors. While appellant and Mitchell's brother remained in the apartment, Officer Tolber took the keys and walked back to the parking lot out of sight of appellant and Mitchell's brother. Officer Tolber went to the red car parked next to Mitchell's car because he "was told by Miss Mitchel[l] that this was the car Mr. Scott had been driving[.]" (Tr. at 18.) No objection was made to this testimony. This statement is the subject of appellant's first, second and third assignments of error.
 {¶ 9} The General Motors key that appellant produced started Donna Smathers' not to testify and presented no evidence. The court found appellant guilty of count one, receiving stolen property, Smathers' automobile.
 {¶ 10} Appellant raises four assignments of error:
I. THE TRIAL COURT VIOLATED THE CONFRONTATION CLAUSE OF THE UNITED STATES AND OHIO CONSTITUTIONS, AS WELL AS THE TENETS OFCRAWFORD V WASHINGTON BY ALLOWING THE TESTIMONY OF MELISSA MITCHELL.
II. THE TRIAL COURT ERRED IN CONSIDERING THE HEARSAY STATEMENTS OFFERED BY OFFICER TOLBER.
III. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE FEDERAL CONSTITUTION.
IV. THE CONVICTION FOR RECEIVING STOLEN PROPERTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 11} In his first assignment of error, appellant argues that Mitchell's out-of-court statement was testimonial in character and its admission denied him the right to confront Mitchell regarding her statement. Crawford v. Washington
(2004), 541 U.S. 36, 124 S.Ct. 1354. In his second assignment of error, appellant asserts that the trial court committed error by considering Mitchell's out-of-court hearsay statement that she saw appellant driving Smathers' red Pontiac.[3] Appellant concedes that trial counsel did not object to the out-of-court statement and, therefore, appellant asks that we review the second assignment of error under the plain error standard of Crim.R. 52. We also note that no objection to Mitchell's out-of-court statement was raised under the Confrontation Clause grounds.[4]
 {¶ 12} Because the first and second assignments of error are interrelated, we will discuss them together. In Crawford, the Supreme Court of Ohio held that the Confrontation Clause encompasses "testimonial" as opposed to non-testimonial evidence. Id. at 68. While the Supreme Court of Ohio did not define "testimonial," the court did acknowledge three possible definitions of that term. Those definitions include: (1) ex parte in-court testimony or its functional equivalent, such as affidavits and prior testimony that the defendant was unable to cross-examine, or pre-trial statements that declarants would reasonably be expected to be used in a prosecution; (2) extra-judicial statements contained in formal testimonial materials such as depositions, prior testimony or confessions; and (3) statements made under circumstances which would lead an objective witness to believe the statement would be available for use at a later trial. Id. at 51-52, 124 S.Ct. 1354, at 1364. The third definition is most likely to exclude out-of-court declarations as "testimonial" and is the only definition relevant to this case.
 {¶ 13} Mitchell's statement to Officer Tolber falls under the third suggested definition of "testimonial" set out inCrawford. The statement was made during the investigation of a possible criminal act, the taking of Mitchell's car without permission, and, therefore, was made under circumstances that would lead an objective witness to believe that the statement would be available for use at a later trial. However, while Mitchell's statement appears to fit the definition of "testimonial," it does not automatically follow that its admission into evidence was plain error.
 {¶ 14} Although Crawford applied Confrontation Clause analysis to testimonial out-of-court statements, the court made clear that the use of such statements may be exempt from Confrontation Clause analysis. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law[.]" Id. at 68. The court noted a distinction between testimonial evidence used to prove the matter asserted in the out-of-court statement, and testimonial evidence that was not used to prove the truth of the statement. "The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. (The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. See Tennessee v.Street, 471 U.S. 409, 414, [84 L.Ed.2d 425], 105 S.Ct. 2078
[1985]"). Id. at 59, fn. 9.
 {¶ 15} Historically, an out-of-court statement that is not offered for proof of the truth of the matters contained in the statement, but to explain something else, is admissible for those purposes. State v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 98, citing State v. Thomas (1980), 61 Ohio St.2d 223, 230,232. For example, out-of-court statements are admissible to explain why a witness took certain action where the primary value of the statement is not to prove the truth of what was stated.State v. Durr (1991), 58 Ohio St.3d 86, 91, certiorari denied,502 U.S. 912, 112 S.Ct. 310; Potter v. Baker (1955),162 Ohio St. 488. This is consistent with the holding of Crawford, at 59, fn. 9, and 68. The fact that the statement may also tend to prove a fact of relevance to the charge is not dispositive of its admissibility. Admissibility is based on whether the statement derives its primary value from the truth therein, or is primarily used to explain some other matter that is relevant to the case.Durr, supra.[5]
 {¶ 16} In this case, Officer Tolber explained the steps he took in investigating Melissa Mitchell's report that her brother took her car without her permission. During this investigation, Officer Tolber learned from Mitchell that appellant had been seen driving the red Pontiac that was parked next to Mitchell's vehicle at her brother's apartment. Although Officer Tolber did not testify that he was aware of Smathers' earlier police report that her red Pontiac had been stolen, it appears from the record that Officer Tolber learned from Mitchell both that the car was stolen and that appellant had been seen driving that car. As a result, Officer Tolber expanded his investigative efforts to include the stolen red Pontiac. His reason for doing so was Mitchell's statement that appellant had been seen driving the Pontiac.
 {¶ 17} The state was entitled to have Officer Tolber explain why he made further investigation of appellant's possible involvement in the stolen Pontiac. It would appear that the primary value of Mitchell's statement to Officer Tolber was not for the proof of the truth therein, i.e., that appellant had driven the car, but the explanations why Officer Tolber went from seeking the return of Mitchell's car to investigating a heretofore unrelated red Pontiac. See Durr, supra. If so, the evidence was admissible for that purpose and would not violate either the Confrontation Clause or Evid.R. 802.
 {¶ 18} While it appears that Mitchell's statement was admissible to explain Officer Tolber's investigation, the record indicates that the trial court considered Mitchell's statement for the truth therein, that appellant had driven Smathers' car, and therefore evidence that he possessed the stolen vehicle. The trial court observed that hearsay was "the weakest form of evidence," but went on to consider Mitchell's statement in finding that appellant had possessed the stolen car. (Tr. at 26.)
 {¶ 19} Where no objection is raised to hearsay evidence, it may be considered by the trier of fact for whatever probative value it may have. Dudukovich v. Lorain Metropolitan HousingAuthority (1979), 58 Ohio St.2d 202, at 208, citing State v.Petro (1947), 148 Ohio St. 473, paragraph eight of the syllabus. See, also, Sarnovsky v. Snyder, Evans Anderson, Inc. (1987),38 Ohio App.3d 33; State v. Sharp (June 25, 1985), Franklin App. No. 84AP-888.
 {¶ 20} Almost 100 years ago, the Supreme Court of Ohio addressed the subject in Diaz v. United States (1912),223 U.S. 442, 32 S.Ct. 250:
* * * [W]hen evidence of that character [hearsay] is admitted without objection, it is to be considered and given its natural probative effect as if it were in law admissible. [Citations omitted.] And of the fact that it came from witnesses who were not present at the trial, it is to be observed that the right of confrontation * * * is in the nature of a privilege extended to the accused, rather than a restriction upon him, [citation omitted], and that he is free to assert it or to waive it, as to him may seem advantageous." Id. at 450. Diaz involved a murder prosecution and arose under the Philippine Civil Government Act. Analysis of Diaz' constitutional right to confront witnesses "face-to-face" was made in conjunction with a review of confrontation cases arising under state constitutions and the Constitution of the United States. Id. at 441. Thus, where hearsay is not challenged under the rules of evidence or under the Confrontation Clause, the trier of fact may consider that evidence for whatever probative value it may have. Id. See, also,United States v. Brown (C.A.2, 1965), 348 F.2d 661; UnitedStates v. Johnson (C.A.5 (Tex.) 1978), 577 F.2d 1304; UnitedStates v. Foster (C.A.9 (Cal.) 1983), 711 F.2d 871. Because appellant did not object to Mitchell's out-of-court statement, under either hearsay or confrontation grounds, the trial court was entitled to consider the statement for whatever probative value it provided. E.g. Diaz and Petro, supra.
 {¶ 21} Although, under Diaz and Petro, the trial court was permitted to consider Mitchell's statement because appellant failed to interpose an objection, we are constrained to review the admission of that evidence under the plain error analysis of Crim.R. 52(B). Therefore, we next consider whether the trial court committed plain error in considering Mitchell's statement.[6]
 {¶ 22} Ohio employs the contemporary objection rule. Ordinarily, the failure to interpose a timely objection at a time when the trial court can correct an error constitutes a waiver of any objection to the admissibility of evidence. However, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Thus, we must review the admission of the hearsay statement under the plain error standard of Crim.R. 52(B).
 {¶ 23} The provisions of Crim.R. 52(B) limit a reviewing court's ability to find plain error:
* * * First, there must be an error, i.e., a deviation from a legal rule. [Citation omitted.] Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. [Citations omitted.] Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. [Citations omitted.]
Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellant court correct it. Crim.R. 52(B) states only that a reviewing court "may" notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plaint error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long,53 Ohio St.2d 91, * * * paragraph 3 of the syllabus * * *"
State v. Barnes (2002), 94 Ohio St.3d 21, 27. The United States Supreme Court has suggested that appellate courts correct plain error "if the error `seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" UnitedStates v. Olano (1993), 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, quoting United States v. Atkinson (1936), 297 U.S. 157,56 S.Ct. 391, 392.
 {¶ 24} In Ohio, plain error must be obvious as well as outcome-determinative. Barnes, at 28, citing State v. Sanders
(2001), 92 Ohio St.3d 245, 257. Therefore, plain error occurs only when, but for the error, the outcome of the trial clearly would have been different. Long, supra; State v. Hill (2001),92 Ohio St.3d 191, 203.
 {¶ 25} Applying that standard, we have analyzed the evidence after first excising the hearsay statement of Melissa Mitchell.[7] Evidence to support a conviction for receiving stolen property does not require proof of immediate physical contact with the stolen property. Possession may be actual or constructive. Either may be sufficient to support a conviction for the offense. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." State v. Wolery (1976), 46 Ohio St.2d 316, 329.
 {¶ 26} Possession of the keys to a motor vehicle is strong evidence of possession of the motor vehicle itself. "[T]he possession of the keys to [an] automobile is a strong indication of control over the automobile and all things found in or upon the automobile." State v. Brittman (Feb. 10, 1994), Franklin App. No. 93AP-1005. See, also, State v. Miller, Montgomery App. No. 20513, 2005-Ohio-4203; State v. Fry, Jackson App. No. 03CA26, 2004-Ohio-5747; State v. Gilbert, Cuyahoga App. No. 86773, 2006-Ohio-3595; State v. Ray, Medina App. No. 03CA-0062-M, 2004-Ohio-3412.
 {¶ 27} Here, Smathers' stolen Pontiac was found parked immediately next to Mitchell's car. Mitchell's car had been taken by her brother. Both cars were in front of the apartment occupied by Mitchell's brother. Both Mitchell's brother and appellant were in the apartment. Appellant had the keys to Smathers' car in his pocket. Without considering Mitchell's statement, we conclude that the remaining evidence both direct and circumstantial, readily supports the conclusion that appellant knowingly possessed the stolen Pontiac. We cannot say that, had the court not considered Mitchell's statement, the outcome of the trial clearly would have been different. Therefore, we do not find that the trial court committed plain error. The first and second assignments of error are overruled.
 {¶ 28} In his third assignment of error, appellant states that he was denied his Sixth Amendment right to the effective assistance of counsel. In his fourth assignment of error, appellant argues that the decision that found him guilty was against the manifest weight of the evidence. As with the first and second assignments of error, the third and fourth assignments of error overlap and are interrelated. Hence, we address them together.
 {¶ 29} Appellant asserts that trial counsel was ineffective because trial counsel failed to object to Officer Tolber's testimony that he "was told by Miss Mitchel[l] that this was the car Mr. Scott had been driving." (Tr. at 18.) A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of counsel's essential duties to the accused. Second is whether counsel's failings prejudiced the accused. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.
 {¶ 30} Judicial review of counsel's performance must be highly deferential. Strickland, at 689; State v. Bradley
(1989), 42 Ohio St.3d 136, 142. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, at 689. Moreover, "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance."Bradley, at 142.
 {¶ 31} To prove the prejudice prong of an ineffectiveness claim, the accused must demonstrate that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, at 694.[8]
 {¶ 32} In Bradley, the Supreme Court of Ohio observed that the Supreme Court specifically chose the "reasonable probability" standard and, "[i]n adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice." Id. at 142. As stated by the Supreme Court, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, cf. United States v. Valenzuela-Bernal [1982],458 U.S. 858, 866-867, * * * and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, at 693. With those standards in mind, we turn to appellant's ineffectiveness claim.
 {¶ 33} A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley, at 143, quoting Strickland, at 697. As noted above, before a reviewing court may reverse on the basis of claimed ineffective assistance of counsel, the reviewing court must conclude that, but for the alleged error or errors of counsel, it is reasonably probable that the result of the proceedings would have been different. Stated another way, we must determine whether the exclusion of Mitchell's statement from evidence would create a reasonable probability that the result of appellant's trial would have been different. As we did with the first and second assignments of error, we begin our analysis by reviewing the evidence of appellant's guilt without the Mitchell statement.
 {¶ 34} We noted above that proof that an accused received, retained or disposed of stolen property does not require proof of immediate physical contact and control over the property and that possession of stolen property may be actual or constructive.Wolery, at 329.
 {¶ 35} Appellant was in possession of the keys to the stolen Pontiac, strong evidence that appellant was in possession of the stolen car. "[T]he possession of the keys to [an] automobile is a strong indication of control over the automobile and all things found in or upon the automobile." E.g., State v. Brittman (Feb. 10, 1994), Franklin App. No. 93AP-1005, and cases cited above in ¶ 26.
 {¶ 36} Smathers' stolen Pontiac was located next to Mitchell's car that had been taken by her brother. Both cars were in front of Mitchell's brother's apartment. Appellant was inside the apartment and had the keys to Smathers' car in his pocket. The direct and circumstantial evidence was sufficient to support a finding that appellant was in possession of the stolen Pontiac and that the result below is not against the manifest weight of the evidence.
 {¶ 37} In the context of appellant's ineffectiveness claim, we cannot say that, but for the failure to object to Mitchell's statement, there is a reasonable probability that the trial court would have found the defendant not guilty. Our confidence in the reliability of the outcome of the case is not undermined by counsel's failure to object to the statement. The remaining evidence, including appellant's possession of the keys to the stolen automobile and his immediate proximity to the vehicle strongly supports the conclusion that appellant possessed stolen property. E.g. Brittman, supra. This remains a close case. However, we find that, although counsel should have raised an objection to the statement, appellant has not met the prejudice prong of Strickland. The third assignment of error is overruled.
 {¶ 38} Because there is sufficient evidence to support the trial court's decision and because the trial court's decision is not against the manifest weight of the evidence, we also overrule the fourth assignment of error.
 {¶ 39} Having considered and overruled each of appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and French, JJ., concur separately in part.
[1] Officer Tolber testified: "I asked him if I could see those [keys] for a second, that I wanted to check into something. He said, Sure, no problem." (Tr. at 18.)
[2] Because Officer Tolber had only mentioned Mitchell's vehicle, it is reasonable to infer that appellant was confident that the car key he possessed would not fit Mitchell's car.
[3] Initially, Officer Tolber's testimony suggests that Mitchell saw appellant drive her car, not Smathers' red Pontiac. (Tr. at 16-17.) However, later in his testimony, Officer Tolber said Mitchell told him appellant had been driving Smathers' Pontiac. (Tr. at 18.)
[4] Where preserved by objection, review of Confrontation Clause claims is for harmless error. United States v. McClain
(C.A.2 (N.Y.) 2004). Confrontation Clause claims not preserved by objection are reviewed for plain error under comparable Fed.R.Crim.P. 52. United States v. Bruno (C.A.2 (N.Y.) 2004),383 F.3d 65, 78.
[5] In Durr, the defendant was charged with the murder of Angel Vincent. A witness recounted an out-of-court statement made by her daughter: "That Darryl Durr trashed Angel." Even though the statement had some value in proving that Durr murdered the victim, the Supreme Court of Ohio concluded that the statement did not derive its primary value from the truth contained in the statement, but, instead, the primary value and, hence, its admissibility, was "to prove her recollection of the events surrounding Angel's disappearance." Id. at 91.
[6] Initially, it appears illogical to hold that the trial court did not commit error in considering Mitchell's statement because appellant failed to object, but then question whether in doing so, the trial court committed plain error. However, not to proceed with plain error analysis would ignore Crim.R. 52(B).
[7] The standard for review of claims of plain error is slightly different from that applied to claims that counsel was ineffective. Plain error occurs when, but for the error, the outcome of the trial clearly would have been different. In contrast, to reverse upon a claim that counsel was ineffective requires a reasonable probability that, but for the errors of counsel, the result would have been different.
[8] We have noted that a different standard applies to plain error analysis. See fn. 7 above.